641 P.2d 1296

**STATE of Arizona, ex rel. ARIZONA DEPARTMENT OF REVENUE, Plaintiff-Appellant,**

v.

**CONTROL DATA CORPORATION, a Delaware corporation, Defendant-Third Party Plaintiff-Appellee,**

**United States of America, Third Party Defendant-Appellee.**

No. 1 CA–CIV 5003.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 20, 1981.

Rehearing Denied Dec. 3, 1981.

Review Denied Jan. 6, 1982.

Robert K. Corbin, Atty. Gen. by Ian A. MacPherson, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Revenue.

Evans, Kitchel & Jenckes, P.C. by Leslie T. Jones, Jr., Phoenix, for Control Data Corp.

William French Smith, Atty. Gen., of the United States by M. Carr Ferguson, Asst. Atty. Gen., Charles E. Stratton, Gilbert E. Andrews, Ann B. Durney, William S. Estabrook, Attys., Tax Division, Dept. of Justice, Washington, D. C., Melvin A. McDonald, Jr., U. S. Atty., Phoenix, James P. Loss, Asst. U. S. Atty., Phoenix, for the United States of America.

## OPINION

EUBANK, Judge.

This appeal concerns the Arizona Transaction Privilege Tax, A.R.S. § 42–1301 et seq., and an exemption therein relating to "sales" made directly to the United States Government. Control Data Corporation, defendant-appellee, was audited and assessed for taxes allegedly due on rental receipts for equipment leased to the United States Government, Department of the Army.[1] Control Data protested the assessment in the Arizona Board of Tax Appeals, which held that the receipts in question were exempt from taxation. The Arizona Department of Revenue then initiated an action in the Superior Court to challenge the Board's ruling, and the trial judge upheld Control Data's exemption privilege. This appeal followed.

In the Superior Court, Control Data joined the United States as a third party defendant, pursuant to contractual arrangements whereby the United States had agreed under the terms of their contract to pay any state tax levied against Control Data. Also, actions were initiated in the Federal District Court of Arizona to challenge the validity of the tax in the first instance. These federal actions are pend-

1. Assessment of $33,726.98 on leases to the United States totaling $1,086,486.79, pursuant to A.R.S. §§ 42–1309, 1314(A)(2), and 1361(A)(1).

ing, awaiting the outcome of this appeal. We find, however, that the alleged exemption is applicable to the tax, and affirm the trial court's judgment that no taxes are due the state from Control Data under the assessment.

The dispute herein centers around the exemption provision of A.R.S. § 42–1321(B)(1), which reads as follows:

B. The provisions of this article shall not apply to sales made directly:

1. To the United States Government, its departments or agencies by a manufacturer, modifier, assembler or repairer.

The sole issue to be decided in this appeal is whether the term "sales" as used in the above quoted provision includes leases of tangible personal property to the United States Government.

Appellees base their argument on the definitional section, former A.R.S. § 42–1301(14), which states in relevant part that:

* * * "Sale" means any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatever, of tangible personal property, for a consideration * * *.

Because the statute expressly defines "sale" to include leases, appellees argue that "sales" as used in A.R.S. § 42–1321(B)(1) also includes leases of tangible personal property to the United States. Thus, they contend that Control Data's lease receipts are exempted from taxation.

The appellant Department of Revenue argues that such a sweeping exemption was never contemplated by the legislature, and that statutory construction is to be based upon legislative intent. In support of its contention, appellants cite a number of cases including: *Arizona State Board of Accountancy v. Keebler*, 115 Ariz. 239, 564 P.2d 928 (App.1977); *United States Fidelity and Guaranty Co. v. Michigan Bank*, 27 Ariz.App. 478, 556 P.2d 326 (1976). These cases, however, also stand for the proposition that:

Legislative intent must first be sought in the words of the statute and if the language of the statute is plain and unambiguous it must be given effect and no other rules of construction will be employed to contradict their clear import. *Keebler, supra*, 115 Ariz. at 240, 564 P.2d at 929. Therefore, we begin our analysis of the legislative intent with the express wording of the statute.

As quoted previously, the provisions applicable to this case clearly and unambiguously state that "sale" includes "lease", and that "sales" made directly to the United States are exempt from taxation. We can see no reason to avoid the obvious import of these words. Rather than creating an ambiguity requiring construction, as suggested by appellant, this exemption rests on the sound public policy of avoiding double taxation between governmental bodies engaged in governmental functions. Viewed from this perspective, there is no distinction between a lease and a true sale. We find the legislative intent, in favor of appellee's contention, fully supported.

Appellant argues, nevertheless, that since the legislature has passed several amendments to the Act concerning leases, these amendments demonstrate a contrary legislative intent. We do not find this argument persuasive. The provisions relevant to this appeal have been in existence for many years, virtually without amendment. *Compare* A.R.S. § 42–1301(19) (1980) (definition of "sale") *with* Laws of 1937, 1st Spec.Sess., ch. 2, § 1; *compare* A.R.S. § 42–1321(B)(1) (1980) *with* Laws of 1956, 2nd Spec.Sess., ch. 2, § 1 (United States Exemption). There is no indication that the legislature ever intended to alter their meaning by the subsequent amendments which were passed, even those amendments specifically referring to leases. *See* A.R.S. § 42–1314(A) (1980). Further, the exemption expressly applies to the entire Article which includes the definition of "sale". Thus, the intent to exempt such sales (leases) is clear.

454

Appellant relies heavily on the case of *Arizona State Tax Commission v. Lawrence Mfg. Co.*, 15 Ariz.App. 486, 489 P.2d 860 (1971). Therein, Division Two of this Court held that the business of selling tangible personal property at retail was not the same as the business of leasing such property for purposes of the exemptions contained in A.R.S. §§ 42–1312 and 42–1312.01. We find no inconsistency between *Lawrence* and our holding here because A.R.S. § 42–1312, construed in *Lawrence*, provides that "sales at retail" shall be exempt. "Sales at Retail" is specifically defined in A.R.S. § 42–1301(20) (1980), and that definition expressly excludes bona fide leases of tangible personal property. Thus, the legislature expressly intended to exclude such leases from the exemption provided by A.R.S. §§ 42–1312 and 42–1312.01.

Reading the Transaction Privilege Tax Act as originally codified, and the subsequent amendments thereto, we hold that A.R.S. § 42–1321(B)(1) was intended to create an exemption for sales or leases of tangible personal property made directly to the United States Government. The express language of the statutes calls for such an exemption, and we can see no reason why this legislative language should be given a different interpretation. A.R.S. § 1–213.

The judgment of the trial court upholding Control Data's exemption privilege is therefore affirmed.

JACOBSON, P. J., and CONTRERAS, J., concur.